UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                  CASE NO. 8:20-cr-39-T-35CPT

EDWIN AGUILAR VICENTE,

    Defendant.
_____/

**EDWIN AGUILAR VICENTE'S
SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD
VARIANCE FROM THE OTHERWISE APPLICABLE GUIDELINE
RANGE**

The defendant, Edwin Aguilar Vicente, by and through the undersigned counsel, hereby files his sentencing memorandum to assist the Court in fashioning an appropriate sentence in this case. In this memorandum, the defendant will address the outstanding objections to the application of the United States Sentencing Guidelines and move the Court for a downward variance from the otherwise applicable advisory guideline range.

Background

Mr. Aguilar Vicente is a 22-year-old man from Mexico. On January 30, 2020, he was charged in a two count Indictment. (Doc. 1). On December 29, 2020, Mr. Aguilar Vicente pleaded guilty to conspiracy with intent to distribute five kilograms or more of cocaine while aboard a vessel subject to the jurisdiction of

the United States (Count 1) and possession of five kilograms or more cocaine with intent to distribute while aboard a vessel subject to the jurisdiction of the United States.(Count 2). (Doc. 191 ¶¶ 2, 3 and 5). This Court accepted his guilty pleas on January 14, 2021. (Doc. 189). The outstanding objection to the Presentence Report is the failure to recognize Mr. Aguilar Vicente is entitled to a role reduction pursuant to U.S.S.G. § 3B1.2.(Doc. 191 ¶20).

I. **Outstanding Objections to Presentence Report**

*Specific Sentencing Characteristics Pursuant to U.S.S.G. § 3B1.2*

The defendant objects to paragraph 20 of the Presentence report. Paragraph 20 fails to recognize Mr. Aguilar Vicente is entitled to a minor reduction for his role in the offense pursuant to U.S.S.G § 3B1.2, which states:

> §3B1.2. Mitigating Role
> Based on the defendant's role in the offense, decrease the offense level as follows:
>   (a)  If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.
>   (b)  If the defendant was a minor participant in any criminal activity, decrease by 2 levels.
> In cases falling between (a) and (b), decrease by 3 levels.

Application note 3(A) of section 3B1.2 states in part:

> A defendant who is accountable under §1B1.3 (Relevant Conduct) only for the conduct in which the defendant personally was involved and who performs a limited function in the criminal activity may receive an adjustment under this guideline. For example, a defendant who is convicted of a drug trafficking offense, whose participation in that

offense was limited to transporting or storing drugs and who is accountable under §1B1.3 only for the quantity of drugs the defendant personally transported or stored may receive an adjustment under this guideline.

Mr. Aguilar Vicente was aboard a small vessel that was transporting cocaine. He did not produce or own the cocaine on the vessel nor did he did he in anyway plan the transportation. Mr. Aguilar Vicente was aware of the conspiracy for a very limited time prior to being placed on a vessel.

The Eleventh Circuit Court of Appeals addressed mitigating role adjustments in large quantity drug cases in *United States v. Carlington Cruickshank* 837 F. 3d. 1182, (11th Cir. 2016). The *Cruickshank* court clarified the Eleventh Circuit's prior ruling in *United States v. De Varon*, 175 F.3d 930, 945 (11th Cir. 1999) (en banc) which held U.S.S.G. § 3B1.2 does not automatically preclude a defendant from being considered for a mitigating role adjustment in a case in which the defendant is held accountable under § 1B1.3 solely for the amount of drugs the defendant personally handled. Apparently, some courts were under the belief that possession of a large quantity of drugs precluded a defendant from receiving a mitigating role adjustment. The *Cruickshank* court reiterated its' position in *De Varon* that "the district court must assess all of the facts probative of the defendant's role in her relevant conduct in evaluating the defendant's role in the offense." *Cruickshank, Id.* at 1193, *citing De Varon,* at 943.

The *Cruickshank* court also noted the Sentencing Commission, through Amendment 635 to the Sentencing Guidelines, adopted amendments to the

Sentencing Guidelines further clarify the factors for a court to consider for a minor-role adjustment, and, in doing so, still continue to embrace the approach the Eleventh Circuit took in *De Varon*. *Id.* at 1194. In November 2015, the Commission added the following language to Application Note 3(C) for § 3B1.2:

> In determining whether [a defendant warrants a minimal or minor participant] or an intermediate adjustment, the court should consider the following non-exhaustive list of factors:
>
> (i)  the degree to which the defendant understood the scope and structure of the criminal activity;
>
> (ii)  the degree to which the defendant participated in planning or organizing the criminal activity;
>
> (iii)  the degree to which the defendant exercised decision- making authority or influenced the exercise of decision- making authority;
>
> (iv)  the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;
>
> (v) the degree to which the defendant stood to benefit from the criminal activity.

Applying the criteria to Mr. Aguilar Vicente a role reduction is warranted. Mr. Aguilar Vicente qualifies under the criteria:

### 1. The degree to which the defendant understood the scope and structure of the criminal activity

Mr. Aguilar Vicente is unaware of the scope or structure of the criminal activity. He does not know the owner of the cocaine, who the cocaine was going to, or the scope and structure of the organization.

## 2. The degree to which the defendant participated in planning or organizing the criminal activity

Mr. Aguilar Vicente did not participate in the planning or organizing the criminal activity. He was told to get on a boat and to take the boat to a location to meet up with another vessel. He did not plan or organize the offense. In fact, Mr. Aguilar Vicente was left in the dark about most of the planning of the criminal activity.

## 3. The degree to which the defendant exercised decision-making authority

Mr. Aguilar Vicente did not have decision-making authority.

## 4. The nature and extent of the defendant's participation in the commission of the criminal activity

Mr. Aguilar Vicente's sole participation was to assist in meeting another vessel and transport of the load to another location. The co-conspirators intentionally kept Mr. Aguilar Vicente unaware of either location at the time of the offense. He was not aware of any other participants, where the cocaine came from or where it was going to or who was receiving the cocaine.

## 5. The degree to which the defendant stood to benefit from the criminal activity

Mr. Aguilar Vicente was not benefiting substantially in relation to the value of the cargo or the amount made by the other (uncharged) participants in the offense.

This case is far larger than five men on a boat in the sea with cocaine. The exact size will most likely be known in the future. At that time the government will

issue a press announcement trumpeting the prosecutions of drug smugglers on conspiracy charges as the government has in the past.[1]

Exhibits 1, 2 and 3 are some examples of press releases issued by the United States Attorneys Office of the Middle District of Florida following the unsealing of prosecution of the conspirators responsible for the cocaine shipments often involving vessel with occupants prosecuted sometimes years earlier. These are cases where the individuals responsible for cultivating, producing, transporting and selling the cocaine are prosecuted. In those cases the individuals are generally charged with one large conspiracy count for all of the cocaine transportation activities in which they participated. In some of the press releases the government identifies the actual vessels used by the conspiracy. The press releases and charges of the second-tier defendants don't make sense in light of the position that Mr. Aguilar Vicente is not entitled to a role reduction. The government's position in their Indictments and press releases in second tier defendant cases that it is one long conspiracy over the course of years involving multiple vessels. Under that analysis Mr. Aguilar Vicente was a minor part of a much larger conspiracy.

---

[1] See Exhibit 1, press release for *U.S. v. Camilo Torres-Martinez* 8:08-cr-00344-SDM-AAS, defendant ultimately sentenced to 151 months then 97 months after rule 35;Exhibit 2, press release for *U. S. v. Francisco Heleno Jaramillo* 8:14-cr-00216-JSM-AAS, defendant ultimately sentenced to 180 months and Exhibit 3, press release for *U.S. v. Richard Mosquera Mosquera* 8:13-cr-00299-RAL-AEP, defendant ultimately sentenced to 135 months.

Through years of experience the government is well aware that others are behind this shipment. The government most likely knows the organization and the parties responsible for the shipment. In fact, the Grand Jury found evidence others were involved in the conspiracy beyond the five defendants. Count One of the Indictment alleges the five defendants "did knowingly and willfully combined, conspire and **agree with each other and with persons unknown to the Grand Jury** to possess with intent to distribute five kilograms or more of a mixture or substance containing a detectable amount of cocaine". (See Doc. 1 Indictment Count 1). Similarly, in Count Two of the Indictment the Grand Jury found the five defendants "did knowingly and intentionally, while **aiding and abetting each other and other persons unknown to the Grand Jury**, possess with intent to distribute five (5) Kilograms or more of a mixture or substance containing a detectable amount of cocaine a scheduled II controlled substance." (See Doc. 1 Indictment Count 2). Clearly, evidence was presented to the Grand Jury allowing them to find other participants in the offense. Mr. Aguilar Vicente's role needs to be compared to that of other identifiable or *discernable* participants in the relevant conduct. *De Varon*, 175 F.3d 930, 940 (11th Cir. 1999) (*en banc*) . At this point others may not be fully identifiable, they are discernable. Webster's Dictionary defines discernable as "able to be perceived by a sense (such as sight or smell) or by the mind." The larger portion of this conspiracy is easily perceived by the mind.

The defendants were in a boat off the coast of Mexico with cocaine. Intellectually one can easily discern that others are involved in the distribution and transportation of this cocaine from where it was made to where it was going. Others are discernable and were intellectually recognized by the grand jury.

Applying these principles to the guideline analysis Mr. Aguilar Vicente qualifies for a role reduction in the criminal activity pursuant to U.S.S.G. §1B1.2 and he is entitled to a two-level sentence reduction. Pursuant to §2D1.1(5) Mr. Aguilar Vicente's base offense level should be decreased to level 34. [2] This would change his total offense level to 27 corresponding toan advisory guideline range of 70-87 months.

## II. Motion for a Downward Variance from the Advisory Guidelines Range

Mr. Aguilar Vicente requests a variance from the otherwise applicable advisory guideline range based on his personal history and the need to avoid unwarranted sentencing disparity. He will briefly address the legal basis for a variance and the specific facts pertaining to him that justify a variance.

**Variance legal basis**

The Eleventh Circuit reemphasized the wide discretion district courts enjoy

---

[2] A district court may reduce a defendant's base offense level by two levels if it finds that the defendant was a "minor participant" in the criminal activity. U.S.S.G. § 3B1.2(b). If the court grants such a reduction in a drug case with a base offense level of 38 defendant's base offense level is decreased by a further four levels, for a total of six levels. *Id.* § 2D1.1(a)(5).

in determining whether variances are appropriate. *See United States v. Rosales-Bruno,* 789 F. 3d 1249 (11th Cir. 2015). Although district courts must consider all available § 3553(a) factors, they need not give all the factors equal weight. *Id. at 1254.* (Citation omitted). "Instead, the sentencing court 'is permitted to attach "great weight" to one factor over others.'" *Id., quoting Gall v. United States,* 552 U.S. 38, 57 (2007). Likewise, although district courts must consider the advisory guidelines range, "it is only one of a dozen or so factors that the court must take into account." *Id.* at 20 (citation omitted). Moreover, "The Supreme Court has been clear that "[t]he Guidelines are not the only consideration…. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district court should then consider all of the §3553 factors to determine whether they support the sentence requested by a party.'" *Id., quoting Gall,* 552 U. S. at 50. In fact, "[n]othing requires a sentencing court to give the advisory guidelines range as much weight as it gives any other § 3553(a) factor or combination of factors." *Id.*

**a. Individual Defendant Characteristics**

The particularized facts about Mr. Aguilar Vicente warrant a variance from the otherwise applicable guideline range. Mr. Aguilar Vicente and his family live Mexico. He lives with his mother-in-law in her home along with his girlfriend, their son and his sister-in-law. He is responsible for all of the bills. He has limited skills because dropped out of school at 15 to work with his father to help support the family. Mr. Aguilar Vicente started working with his father as a tour guide in

Mexico. He took tourists on beach and snorkeling excursions. He also worked on other boats in various capacities when his father did not have enough work for him. At the time of the offense Mr. Aguilar Vicente was working for his father and his father's business was not doing well financially. His father was behind on the payments for his boat (the tool of his trade) and the payments for the slip where the boat was docked. His father was denied several bank loans and the owner of the marina was about to take action for the failure to pay for the boat slip. At this time Mr. Aguilar Vicente was approached with plan to participate in the conspiracy and foolishly joined.

**b. Need to Avoid Unwarranted Sentencing Disparity**

Generally the government's position at sentencing in the Middle District of Florida boat cases is the fiction that only the persons caught on the vessel were involved with the cocaine. The fact that Columbian cartels are shipping cocaine usually through large multinational drug transportation organizations specifically designed to use poorly educated mariners to help transport the cocaine is ignored. These mariners are used, while, for the most part, the persons behind the cocaine remain un-charged. Occasionally these persons are identified and prosecuted. However, sentences resulting from those prosecutions are not proportionate with the sentence recommended by the USSG for Mr. Vicente. Exhibits 1, 2 and 3 are press releases by the United States Attorney's Office touting prosecutions of persons responsible for multiple shipments of and, in all likelihood, profiting multiple millions of dollars with each shipment. The sentences are somewhat

difficult to contrast due to sealed document filings. However, as noted in footnote 1 the defendants, who were responsible for sending multiple vessels loaded with cocaine over periods of years, received sentences of 180 months, 97 months and 135 months in prison. Mr. Aguilar Vicente's advisory guideline range is disproportionally severe compared to far more involved and culpable individuals.

Conclusion

Mr. Aguilar Vicente is a good candidate for rehabilitation and very unlikely to reoffend. He was a hard-working person in Mexico and he will continue to work hard after his release from prison. At the sentencing hearing, the defendant will request the Court to vary from the otherwise applicable guideline range.

Respectfully submitted,

FARMER & FITZGERALD, P.A.

*Timothy J. Fitzgerald*
Timothy J. Fitzgerald, Esq.
FL Bar No. 0780618
400 N. Tampa St. Suite 2840
Tampa, FL 33602
(813) 228-0095
FAX (813) 224-0269
fflawpafedtjf@aol.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the original of the foregoing has been furnished by Cm/ecf on March 2, 2021 to the following:


AUSA Daniel Baeza
Office of the U.S. Attorney
400 North Tampa Street